# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Novus Franchising, Inc.,
a Washington corporation,

    Plaintiff,

v.

AZ Glassworks, LLC,
an Arizona limited liability company,

Capital One Auto Glass, LLC,
an Arizona limited liability company,

Edward Longoria, and

Jeannie Hersh,

    Defendants.

File No. 12-cv-1771 (MJD/TNL)

**REPORT & RECOMMENDATION**

---

James M. Susag and Susan E. Tegt, Larkin Hoffman Daly & Lindgren Ltd., 7900 Xerxes Avenue South, Suite 1500, Minneapolis, MN 55431-1194 (for Plaintiff);

AZ Glassworks, LLC;

Capital One Auto Glass, LLC;

Edward Longoria; and

Jeannie Hersh.

---

   This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Plaintiff Novus Franchising, Inc.'s ("Novus") Motion for a Preliminary Injunction Against All Defendants (Docket No. 3). This motion has been referred to the undersigned for a report and recommendation to the Honorable Michael J. Davis, Chief

United States District Judge of the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and Local Rule 72.1. (*See* Ord. of Referral, Docket No. 21.)

A hearing was held on September 24, 2012. James M. Susag and Susan E. Tegt appeared on behalf of Novus. Defendants did not appear.

## I.

Novus is engaged in the business of mobile automotive glass repair and replacement. (Compl., ¶ 21, Docket No. 1.) In connection with its business, Novus has registered certain trademarks with the United States Patent and Trademark Office ("PTO"), including United States Trademark Registration Nos. 1,295,361; 1,438,701; and 1,966,303 for the NOVUS mark and United States Trademark Registration No. 3,266,675 for the THE WINDSHIELD REPAIR EXPERTS mark. (Compl., ¶ 23; Pl.'s Memo. at 3, Docket No. 5.) Novus authorizes its franchisees to use its marks to distinguish their NOVUS businesses from those of competing automotive glass businesses. (Compl., ¶ 24.)

In September 2009, Novus entered into three franchise agreements with non-party Arizona Glass Works. (Compl., ¶ 26.) Two of these agreements, covering franchises in Phoenix, Arizona, and Laguna Beach, California, were subsequently assigned to Defendant AZ Glassworks, LLC ("AZ") in March 2011 (Compl., ¶ 6, Ex. C, Docket No. 1-3.) The Arizona agreement ultimately encompassed the Counties of Maricopa and Pinal. (Compl., ¶¶ 27, 34.)

In connection with the assignment, Defendants Edward Longoria and Jeannie Hersh executed personal guaranties for the payment of all franchise fees and simultaneously agreed to be bound by all covenants, obligations, and the like contained in the franchise agreements. (Compl., Ex. D, Docket No. 1-4.)

The franchise agreements each contained covenants not to compete with Novus both during the term of the franchise agreement and for two years following termination or expiration of the agreement:

21.2  *In-Term Covenant Not-to-Compete*
You agree that you, your Owners, the Personal Guarantors of your obligations under this Agreement (the "Personal Guarantors"), and the members of your and their Immediate Families will not, during the term of this Agreement, for your or their own account, or as an employee, agent, consultant, partner, officer, director, member, or owner of any other person, firm, entity, partnership, company, or corporation, (a) seek to employ any person who is at that time employed by us or by any Novus® franchisee without the prior consent of their employer, or (b) own, operate, lease, franchise, license, conduct, engage in, consult with, be connected with, have any interest in, or assist any person or entity engaged in any business that is in any way competitive with or similar to the Business System or the Business (including any glass repair and/or glass replacement or installation business).

21.3  *Post-Term Covenant Not-to-Compete*
You agree that you, your Owners, the Personal Guarantors, and the members of your and their Immediate Families will not, for a period of two years after the termination or expiration of this Agreement, for your or their own account or as an employee, agent, consultant, partner, officer, director, member, or owner of any other person, firm, entity, partnership, company, or corporation (a) seek to employ any person who is at that time employed by us or by any Novus® franchisee without the prior consent of their employer, or (b) own, operate, lease, franchise, license, conduct, engage in, consult with, be connected with, have any interest in, or assist

any person or entity engaged in any or other business that is in any way competitive with or similar to the Business System or the Business (including any glass repair and/or glass replacement or installation business) if that business is located within (i) your [area of primary responsibility], (ii) any area of primary responsibility we grant to any other Novus® franchise or business, or (iii) within 10 miles of any business location of any Novus® franchise or business in the United States and its possessions.

(Compl., Exs. A, B.)

In September 2011, AZ stopped submitting revenue reports and paying monthly royalties to Novus as required by the franchise agreements. (Compl., ¶ 45, Ex. A, ¶¶ 6.1-.3, 15.3, Ex. B, ¶¶ 6.1-.3, 15.3.)

In October 2011, Novus, AZ, Hersh and non-party Laci Buller executed an amendment to the franchise agreements, identifying Hersh and Buller as each having a fifty-percent ownership interest in AZ and Longoria having no interest in AZ. (Compl., ¶ 42, Ex. H, Docket No. 1-8.)

In March 2012, Novus sent a notice of default to the attention of AZ, Hersh, and Buller regarding the missing revenue reports and monthly royalty payments. (Compl., ¶ 49, Ex. K, Docket No. 1-11.) To date, these defaults have not been cured. (Compl., ¶ 50; Pl.'s Memo. at 9.)

At some point, Novus became aware that Longoria and Hersh were operating Defendant Capital One Auto Glass, LLC ("Capital One") in Arizona. (Compl., ¶ 51.) Capital One is an automotive glass repair and replacement business. (Compl., ¶ 51; Bettin Aff., Ex. A, Docket No. 8-1.)

As of July 5, Capital One was using Novus's NOVUS and THE WINDSHIELD REPAIR EXPERTS marks on its website, novusautoglassreplacement.com. (Beveridge Aff., ¶ 15, Docket No. 9, Ex. G, Docket No. 9-3; *see also* Buller Aff., ¶ 11.) As of July 11, Capital One had changed its homepage to capitaloneautoglass.com and was no longer using Novus's marks on the homepage. (Beveridge Aff., ¶ 16, Ex. H, Docket No. 9-3.) When a person clicked on the homepage's hyperlink "booknow" to make an appointment, however, he or she was directed to a webpage containing, among other things, the NOVUS mark and the additional hyperlink "Company website," which resolved back to the novusautoglassreplacement.com website containing Novus's NOVUS and THE WINDSHIELD REPAIR EXPERTS marks. (Beveridge Aff., ¶ 16, Ex. H.)

Non-party Cobblestone Auto Glass, LLC ("Cobblestone") is Novus's largest franchisee in Arizona, operating five Novus franchises in Maricopa County. (Pl.'s Memo. at 10; Bettin Aff., ¶ 2.) Cobblestone is contractually obligated to open seven additional Novus franchises by the end of 2020. (Bettin Aff., ¶ 6.) Cobblestone and Novus are concerned that Longoria and Hersh are using confidential information provided to them while they were Novus franchisees and the misappropriation of Novus's marks to operate Capital One and divert customers away from legitimate Novus franchises. (Pl.'s Memo. at 10-11; *see* Bettin Aff., ¶ 16.) Cobblestone and Novus are also concerned that any inferior services or products supplied by Capital One will be wrongfully attributed to Novus and that Capital One's advertised rebates will undercut

pricing of legitimate Novus franchises while creating a customer expectation of such rebates. (Pl.'s Memo. at 11; Bettin Aff., ¶¶ 13-16.)

## II.

Novus brings claims for trademark infringement, violations of the Minnesota Deceptive Trade Practices Act, violations of the Minnesota Unlawful Trade Practices Act, and unfair competition against Capital One, (Compl., ¶¶ 57-84); breach of the franchise agreements' covenants not compete against Longoria and Hersh, (Compl., ¶¶ 85-89); breach of the franchise agreements' required gross revenue reports and royalties against AZ, (Compl., ¶¶ 90-95); breach of the personal guaranties by Longoria and Hersh, (Compl., ¶¶ 96-99); breach of guaranty to promissory note against Longoria, (Compl., ¶¶ 103-07); and unjust enrichment, tortious interference with prospective business relations, recovery of attorneys' fees against all Defendants, (Compl., ¶¶ 108-20). Novus also demands an audit of AZ's business. (Compl., ¶¶ 100-02.)

Novus filed the instant motion for a preliminary injunction against all Defendants on August 17. (Mot. for Prelim. Inj.) The motion was subsequently referred to the undersigned under 28 U.S.C. § 636 and Local Rule 72.1. (*See* Ord. of Referral.) The undersigned held a hearing on September 24. None of the Defendants responded to Novus's motion or appeared for the hearing. At the hearing, Novus withdrew its motion with respect to the individual defendants, leaving only the entity defendants AZ and Capital One. Therefore, the Court proceeds to consider Novus's motion only with respect to the claims brought against AZ and Capital One.

# III.

In considering whether a request for a preliminary injunction should be granted, the Court looks to "(1) the likelihood of success on the merits; (2) the presence or risk of irreparable harm; (3) the balancing of the harms of granting or denying an injunction; and (4) the public's interest." *CDI Energy Servs., Inc. v. West River Pumps., Inc.*, 567 F.3d 398, 401-02 (8th Cir. 2009) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981)). No factor is itself determinative and the ultimate "question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase Sys., Inc.*, 640 F.2d at 113. The issuing of a preliminary injunction rests within the Court's discretion. *CDI Energy Servs., Inc.*, 567 F.3d at 401.

## A. Likelihood of Success on the Merits

### 1. Trademark Infringement: Capital One

Novus asserts trademark infringement only against Capital One. (*See* Compl., ¶¶ 57-70; Pl.'s Memo. at 40.) In order to succeed on a trademark infringement claim, a mark holder must show that the alleged infringer's "use of its marks was likely to cause confusion either regarding the origin of its products and services, or confusion as to whether those products were affiliated with [the mark holder]." *Rainbow Play Sys., Inc. v. GroundScape Techs.*, LLC, No. 03-cv-3411 (MJD/JGL), 364 F. Supp. 2d 1026, 1034 (D. Minn. 2005); *see* 15 U.S.C. §§ 1114(1), 1125(a)(1)(A); *Everest Capital Ltd. v. Everest Funds Mgmt., LLC*, 393 F.3d 755, 759 (8th Cir. 2005).

In determining the likelihood of confusion, the Court looks at six factors:

> 1) the strength of the plaintiff's mark; 2) the similarity between the plaintiff's and defendant's marks; 3) the degree to which the allegedly infringing product competes with the plaintiff's goods; 4) the alleged infringer's intent to confuse the public; 5) the degree of care reasonably expected of potential customers, and 6) evidence of actual confusion.

*Davis v. Walt Disney Co.*, 430 F.3d 901, 903 (8th Cir. 2005). "The ultimate inquiry always is whether, considering all the circumstances, a likelihood exists that consumers will be confused about the source of the allegedly infringing product." *Everest Capital Ltd.*, 393 F.3d at 759 (quotation omitted); *see also J&B Wholesale Distrib., Inc. v. Reux Beverages, LLC*, No. 07-cv-4570 (MJD/SRN), 621 F. Supp. 2d 678, 684 (D. Minn. 2007).

### a. Strength of the Mark

The strength of a mark is derived from "the distinctiveness of the mark and the extent to which the mark is recognized by the relevant consumer class." *J&B Wholesale Distrib., Inc.*, 621 F. Supp. 2d at 684 (quotation omitted). "The distinctiveness of a mark is determined by whether the mark is generic, descriptive, suggestive or arbitrary/fanciful. An arbitrary mark is one that bears no relation to the product. Such marks are entitled to protection whether or not they have acquired secondary meaning." *Id.* (citations omitted).

The Court finds that the NOVUS mark is an arbitrary mark. There is nothing about the NOVUS mark that is indicative or suggestive of Novus's automotive glass services. The NOVUS mark is therefore entitled to protection. *See id.* at 685.

As for THE WINDSHIELD REPAIR EXPERTS mark, the Court finds that this mark is, at best, descriptive. Descriptive marks "convey[] an immediate idea of the ingredients, qualities or characteristics of the goods and [are] protectible only if shown to have acquired a secondary meaning." *Frosty Treats Inc. v. Sony Computer Entm't Am. Inc.*, 426 F.3d 1001, 1005 (8th Cir. 2005) (quotation and citation omitted). Novus's THE WINDSHIELD REPAIR EXPERTS mark conveys an immediate idea of high quality, automotive glass repair services. *See id.* (FROSTY TREATS mark conveys an immediate idea of its "business of selling frozen desserts out of ice cream trucks").

"Secondary meaning is an association formed in the minds of consumers between the mark and the source or origin of the product." *Id.* (quotation omitted). In order to establish secondary meaning, Novus "must show that [its THE WINDSHIELD REPAIR EXPERTS mark] serves to identify its goods and distinguish them from others." *Id.* Secondary meaning "require[s] that the public recognize the mark and associate it with a single source." *Id.* Novus asserts that it is "known as the inventor of windshield repair" and "has a dominant position in the automotive glass franchise business with approximately 300 franchises in North America and over 2,000 locations worldwide." (Pl.'s Memo. at 3; Beveridge Aff., ¶ 3.) Given that there is no challenge to the public's association with Novus's THE WINDSHIELD REPAIR EXPERTS mark and Novus's services and the fact that Capital One is using this mark in connection with automotive glass repair services, the Court finds that this mark is also entitled to protection. *See Frosty Treats Inc.*, 426 F.3d at 1005-06 ("Circumstantial evidence such as the exclusivity, length and manner of use of the mark; the amount and manner of advertising;

the amount of sales and number of customers; the plaintiff's established place in the market; and the existence of intentional copying could also establish secondary meaning.").

Accordingly, Novus's NOVUS and THE WINDSHIELD REPAIR EXPERTS marks are both strong, weighing in favor of a likelihood of confusion.

### b. Similarity of the Marks

Novus asserts that Capital One is using marks identical to the marks Novus makes available to its franchisees. Capital One has offered no evidence rebutting this argument and, therefore, this factor weighs in favor of Novus and the likelihood of confusion. *See Davis*, 430 F.3d at 903-04; *J&B Wholesale Distrib., Inc.*, 621 F. Supp.2d at 685.

### c. Degree of Competition

When the products of the mark holder and the accused infringer are closely related, confusion is more likely because "it is reasonable for consumers to believe the products come from the same source." *Davis*, 430 F.3d at 904. "Products are in competitive proximity when there is similarity or overlap in their sales outlets, trade channels, and customers. This factor favors a finding of likelihood of confusion when it is reasonable for consumers to think the products came from the same source or are somehow affiliated." *Roederer v. J. Garcia Carrion, S.A.*, No. 06-cv-213 (JNE/SRN), 732 F. Supp. 2d 836, 869-70 (D. Minn. 2010) (citations omitted).

Novus and Capital One are both in the business of providing automotive glass repair services; their customer base is the same and they are in direct competition. Novus operates through franchises and, therefore, it is reasonable for a consumer to think that

Capital One is affiliated with Novus when they see Novus's marks in connection with Capital One's services. This factor weighs in favor Novus and a likelihood of confusion.

### d. Intent to Confuse

"An inference of an intent to trade upon the plaintiff's good will arises if the defendants, with knowledge of plaintiff's mark, chose a mark similar to that mark from the infinite number of possible marks." *Aveda Corp. v. Evita Mktg.*, No. Civ. 4-88-329, 706 F. Supp. 1419, 1429 (D. Minn. 1989); *see also J&B Wholesale Distrib., Inc.*, 621 F. Supp. 2d at 686 ("[E]vidence of an intent on the part of the alleged infringer to pass off its goods as the product of another raises an inference of likelihood of confusion."). Here, Longoria and Hersh—the individuals behind Capital One—used Novus's marks *as Novus franchisees* and, therefore, had direct knowledge of Novus's marks and their value when they subsequently used the marks in connection with Capital One's competing automotive glass repair services. (*See* Pl.'s Memo. at 42.) The Court finds that this factor weighs in favor of Novus and the likelihood of confusion.

### e. Degree of Consumer Care

This factor "consider[s] the degree of care that consumers would use in purchasing the product that bears the allegedly infringing mark." *Davis*, 430 F.3d at 904. There is no evidence in the record as to the degree of care consumers exercise when purchasing these types of repair services. Therefore, the Court finds that this factor is neutral.

### f. Actual Confusion

"Although such incidents [of actual confusion] are proof of the likelihood of confusion, the plaintiff is not required to bring forth incidents of actual confusion to

succeed in an infringement case." *Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 768 (8th Cir. 2010).  While Novus argues that it has concerns over business diversion, inferior product and/or service associations, and pricing (concerns it shares with Cobblestone), (Pl.'s Memo. at 10-11, 24), there is no evidence of actual confusion between Novus's products and those sold by Capital One.  Therefore, the Court finds that this factor is also neutral.

Based on the foregoing and the balance of factors weighing in favor of a likelihood of confusion, the Court concludes that Novus has demonstrated a likelihood of success on its trademark infringement claim against Capital One.  *See Country Inns & Suites by Carlson, Inc. v. Two H.O. P'ship*, No. 01-cv-1214 (JRT/RLE), 2001 WL 1587903, at *2 ("Indeed, common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks." (quotation omitted)).

## 2.  Covenant Not to Compete: AZ

Novus has not claimed that Capital One is in breach of a covenant not to compete—indeed, Capital One did not have any agreement with Novus.

As for AZ, Novus's pleadings are somewhat inconsistent and unclear as to whether Novus asserts claims for breach of the covenants not to compete against Longoria, Hersh, AZ, or some combination thereof.  In Count VI of the Complaint, which is titled "Breach of the Franchise Agreements Against Longoria and Hersh (Violation of In-Term and Post-Term Covenants Not to Compete)," Novus identifies AZ as a party to the franchise agreements, but then only alleges that Longoria and Hersh have breached

the covenants not to compete. (Compl., ¶¶ 86-88.) Similarly, in the memorandum supporting this motion, Novus collectively identifies AZ, Longoria, and Hersh as the "Franchisee Defendants," (Pl.'s Memo. at 1), but, in its argument, specifically asserts that Longoria and Hersh breached the covenants not to compete. (Pl.'s Memo. at 28; *see also* Pl.'s Memo. at 39.) Further muddying the waters is Novus's contention that "the Franchisee Defendants are operating a competitive business that is using Novus's name and trademarks." (Pl.'s Memo. at 35; *see also* Pl.'s Memo. at 38-39.)

There are no factual allegations that AZ is operating a competing business in violation of the covenants not to compete. In one example from its Complaint, Novus states: "By holding an interest in, and assisting with the operations of Capital One, Longoria and Hersh have diverted business that rightfully should have come to other NOVUS® franchisees in Arizona, *including AZ . . . , resulting in a loss of income to AZ* . . . and other NOVUS® franchisees operating in the area . . . ." (Compl., ¶ 52 (emphasis added).)

This Court is cognizant of the fact that a business entity, such as AZ, can only act through its human principals. But, in light of the fact that (a) Novus has withdrawn its motion with respect to Longoria and Hersh and (b) there was no covenant not to compete between Novus and Capital One, this Court's analysis will focus on only whether AZ breached the covenants not to compete.

With respect to AZ, there are no facts alleging any breach of the covenants not to compete. Therefore, the Court concludes that Novus is not likely to succeed on the merits of this claim *with respect to AZ. Cf. U.S. ex rel Raynor v. Nat'l Rural Utils. Co-*

*op. Fin., Corp.*, ___ F. 3d ____, 2012 WL 3600303, at *2 (8th Cir. Aug. 23, 2012) ("[A]lthough a complaint need not contain 'detailed factual allegations,' it must contain facts with enough specificity 'to raise a right to relief above the speculative level.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 1965 (2007))).

### B.  Irreparable Harm

"To succeed in demonstrating a threat of irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011) (quotation omitted); *see also Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 375 (2008) ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction.").  As the Supreme Court stated in *Winter*, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunction relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  555 U.S. at 22, 129 S. Ct. 365, 375-76.  "Possible or speculative harm is not enough.  Rather, the party seeking the injunctive relief must show a significant risk of harm exists.  The absence of such a showing alone is sufficient to deny a preliminary injunction." *Doe v. LaDue*, No. 07-cv-2190 (DSD/SRN), 514 F. Supp. 2d 1131, 1135 (D. Minn. 2007) (citations omitted); *see also Roudachevski*, 648 F.3d at 706 ("Even when a plaintiff has a strong

claim on the merits, preliminary injunctive relief is improper absent a showing of a threat of irreparable harm.").

### 1. Trademark Infringement: Capital One

"Irreparable harm is presumed where there is trademark infringement." *J&B Wholesale Distrib., Inc.*, 621 F. Supp. 2d at 689; *see also Advantus Capital Mgmt. v. Aetna, Inc.*, No. 06-cv-2855 (JMR/FLN), 2006 WL 2916840, at *5 (D. Minn. Oct. 11, 2006) ("Thus, courts may presume irreparable harm when likelihood of confusion is demonstrated in a trademark case."). Accordingly, this factor weighs in favor of granting a preliminary injunction against Capital One.

### 2. Covenant Not to Compete: AZ

Novus argues that it is "fac[ing] ongoing irreparable harm as a result of the Franchisee Defendants' violations of their covenants not to compete." (Pl.'s Memo. at 13.) Novus asserts that it has been and continues to be irreparably harmed by a loss of business and good will, citing (1) Cobblestone's concerns, (Pl.'s Memo. at 15); (2) the ill-gotten business advantage the "Franchisee Defendants" received by "continuing to use the 'know how' and industry contacts learned from Novus" "after unilaterally deciding to stop paying royalties to Novus," (Pl.'s Memo. at 19); (3) the threat to its franchise system as "other franchisees may similarly seek to retain the substantial benefits provided to them during their franchise tenure, terminate or let their franchise agreements expire, and then ignore their contractual commitments," (Pl.'s Memo. at 21); and (4) the harm to the franchise industry as a whole "[i]f franchisors cannot rely on the judicial system to

enforce the provisions of franchise agreements that are designed to protect franchise systems." (Pl.'s Memo. at 22.)

"Potential loss of good will qualifies as irreparable harm." *Life Time Fitness, Inc. v. DeCelles*, No. 12-cv-420 (DSD/SER), 854 F. Supp. 2d 690, 695 (D. Minn. 2012) (quotation omitted). Moreover, "[i]t is difficult to attract a new franchisee when a former franchisee is improperly competing within the same area." *Novus Franchising, Inc. v. Livengood*, No. 11-cv-1651 (MJD/TNL), 2012 WL 38580, at *5 (D. Minn. Jan. 9, 2012); *see also Anytime Fitness, Inc. v. Reserve Holdings, LLC*, No. 08-cv-4905 (MJD/JJK), 2008 WL 5191853, at *6 (D. Minn. Oct. 8, 2008) ("If the preliminary injunction is not granted to enforce AFI's covenant not to compete, its good will will be harmed by a competing business operating at the former Anytime Fitness location, impairing AFI's ability to establish another franchise in that area.").

But in the *Life Time Fitness*, *Anytime Fitness*, and prior *Novus Franchising* cases, there was evidence that the defendant was engaged in a competing business. *See Life Time Fitness, Inc.*, 854 F. Supp. 2d at 694 (personal trainer employed by similar personal-fitness facility); *Novus Franchising, Inc.*, 2012 WL 38580, at *3 (former franchisees "still operating an automotive glass repair and replacement business within th[eir] [area of primary responsibility]"); *Anytime Fitness, Inc.*, 2008 WL 5191853, at *3 (former franchisee still operated gym at same location and was still using franchisor's signage, business cards, equipment, and forms). Here, Novus has not alleged that AZ is operating a competing business, only Longoria, Hersh, and Capital One: "If the Franchisee Defendants' covenants not to compete are not enforced, then Longoria's and

16

Hersh's operation of Capital One is sending the message to Novus's 350+ franchisees in the United States that it is more beneficial to operate an independent business than one associated with the NOVUS® Business System." (Pl.'s Memo. at 20.) Because there is no indication that AZ is currently operating a competing business, Novus has not made the requisite showing of irreparable harm against AZ. Because Novus has not shown that irreparable harm is likely absent injunctive relief, Novus's motion for a preliminary injunction should be denied with respect to AZ. *See Winter*, 555 U.S. at 22, 129 S. Ct. 365, 375-76; *Roudachevski*, 648 F.3d at 706; *Doe*, 514 F. Supp. 2d at 1135.

### C. Balancing of the Harms

This factor requires the Court to "[c]onsider[] whether the irreparable harm to the movant outweighs any potential harm to the nonmovants should the injunction issue." *Doe*, 514 F. Supp.2d at 1136. Capital One did not respond to Novus's motion, thus passing on the opportunity to voice any potential harm that Capital One might suffer as a result of the injunction.

As Novus points out, "Capital One may continue to operate its auto glass repair and replacement business, it just . . . must cease using Novus's Names and Marks." (Pl.'s Memo. at 26.) Moreover, Capital One already removed Novus's marks from its website once before. There is nothing to indicate that it cannot do so again. Any harm Capital One experiences as a result of no longer using Novus's marks was self-inflicted by Capital One's decision to use the marks of another without the requisite permission. *See Buffalo Wild Wings Int'l, Inc. v. Grand Canyon Equity Partners, LLC*, No. 11-cv-3287

(RHK/LIB), 829 F. Supp. 2d 836, 846 (D. Minn. 2011) (any harm to former franchisee enjoined from using franchisor's marks was result of franchisee's own conduct).

Accordingly, this factor weighs in favor of Novus and its request for a preliminary injunction against Capital One.

### D. Public Interest

Novus argues that this factor "clearly favors" the issuance of a preliminary injunction against Capital One and its use of Novus's marks because "[c]onsumer confusion is by its very nature against the public interest and is a key purpose of trademark infringement statutes [and] [t]here can be no question that the public is disserved by dishonest and misleading actions such as those being used by Capital One." (Pl.'s Memo. at 42-23.)

This Court agrees. "The public has an interest in protecting intellectual property and preventing consumer confusion." *Advantus Capital Mgmt.*, 2006 WL 2916840, at *6; *see also Buffalo Wild Wings Int'l, Inc.*, 829 F. Supp. 2d at 847 ("This Court has repeatedly recognized that the public interest is promoted by preventing customer confusion and infringement of trademarks." (quotation omitted)); *J&B Wholesale Distrib., Inc.*, 621 F. Supp. 2d at 689 ("The public interest weighs in favor of protecting consumers against trademark infringement."). This factor likewise favors Novus and the issuance of a preliminary injunction against Capital One.

Based on the foregoing, this Court finds that Novus has demonstrated a likelihood of success on the merits of its trademark infringement claim against Capital One; Novus will suffer irreparable harm if Capital One is not enjoined from using Novus's marks; any

harm to Capital One was self-inflicted and therefore does not outweigh the harm to Novus were the injunction not to issue; and the public interest favors injunctive relief under the circumstances of this case. Therefore, Novus's motion for a preliminary injunction against Capital One should be granted.

## IV.

Rule 65 of the Federal Rules of Civil Procedure states that "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined . . . ." Fed. R. Civ. P. 65(c). A district court has wide discretion in determining the amount of bond required and will be reversed only if it "abuses that discretion due to some improper purpose, or otherwise fails to require an adequate bond or to make the necessary findings in support of its determination." *Hill v. Xyquad, Inc.*, 393 F.2d 627, 632 (8th Cir. 1991).

Novus requests that the Court not require a bond pursuant to the terms of the franchise agreements, which each provide: "[The franchisee] agree[s] that [the franchisor] will be entitled to obtain this injunctive relief without posting a bond or, if the court nevertheless requires a bond, by posting a bond set by the court in an amount not to exceed $5,000." (Beveridge Aff., Ex. A, ¶ 24.1, Ex. B, ¶ 24.1.) (Pl.'s Memo. at 44.) Alternatively, Novus requests that any bond not exceed $5,000. (Pl.'s Memo. at 44.)

As stated above, Capital One did not respond to Novus's motion and therefore this Court does not have any input from Capital One as to the amount of damages it would sustain should it later be determined that Capital One was wrongfully enjoined. Because

of Novus's high likelihood of success on its trademark infringement claim against Capital One—Novus never authorized Capital One to use any of its marks—this Court finds that a bond of $5,000 will be sufficient. *See Sylvan Learning Inc. v. Learning Solutions, Inc.*, Civ. No. 1:11-00236-KD-B, 795 F. Supp.2d 1284, 1304 (S.D. Al. 2011) (no bond required when licensor had high likelihood of success on trademark infringement claim against former licensee); *Petro Franchise Sys., LLC v. All Am. Props., Inc.*, No. EP-08-CV-387-KC, 607 F. Supp. 2d 781, 801 (W.D. Tex. 2009) (franchisor's strong likelihood of success on trademark infringement claim against franchisee was factor in evaluating bond for preliminary injunction).

## V.

Finally, Novus requests that the Court award it its reasonable attorneys' fees and costs pursuant to the terms of the franchise agreements. Each franchise agreement contains the following provision:

> 23.3    Collection of Enforcement Fees & Costs
> You will pay us for any and all Costs and Expenses we incur for the collection of past Due Royalty Fees or other amounts due to us or our affiliates. In addition, you will pay all Costs and Expenses we incur in successfully enforcing any term, condition or provision of this Agreement, *in successfully enjoining any violation of this Agreement by you*, or in successfully defending any lawsuit you bring against us.

(Beveridge Aff., Ex. A, ¶ 23.3, Ex. B., ¶ 23.3 (emphasis added).)

This Court recommends that Novus's request for attorneys' fees and costs be *denied without prejudice at this time*. First, Longoria and Hersh were parties to the franchise agreements, not Capital One. Second, even if the Capital One were to come

within the purview of the franchise agreements based on the guaranties its principals executed, an award of attorneys' fees and costs at this stage seems premature. Preliminary injunctions "preserve the status quo *until the merits are determined.*" *Dataphase Sys., Inc.*, 640 F.2d at 113 (emphasis added). At this point, there are only allegations—albeit strong ones—that the franchise agreements have been violated; there has been no determination on the merits of Novus's claims.

## VI.

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Novus's Motion for a Preliminary Injunction Against All Defendants (Docket No. 3) be **GRANTED IN PART**, as follows:

   a. Effective immediately, Capital One, and all persons acting in active concert with it who receive notice of this Order, be permanently restrained and enjoined from any use of the registered NOVUS® Marks and all derivations thereof;

   b. Effective immediately, Capital One, and all persons acting in active concert with it who receive notice of this Order shall remove and return to Novus or destroy all signage, promotional materials, and other materials bearing the NOVUS® Marks, including internet websites, within five (5) days of the effective date of any injunction order; and

   c. Capital One shall provide proof to Novus's counsel of all steps taken pursuant to any injunction order within seven (7) days of the effective date of the injunction order.

2. Novus's Motion for a Preliminary Injunction Against All Defendants (Docket No. 3) be **DENIED IN PART WITHOUT PREJUDICE** with respect to AZ.

3. Novus's request for attorneys' fees and costs be denied without prejudice.

4. Any injunction order shall become effective upon personal service thereof upon Capital One and the posting of a $5,000 bond by Novus.


Dated:  September   27  , 2012                *s/ Tony N. Leung*
                                              Tony N. Leung
                                              United States Magistrate Judge
                                              for the District of Minnesota


                                              *Novus Franchising, Inc. v. AZ Glassworks, LLC et al.*
                                              File No. 12-cv-1771 (MJD/TNL)


Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before **October 12, 2012**.